**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **ANTONIO COURTNEY,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | **Case No. 4:24-CV-00627-NCC** |
| **v.** | ) | |
| | ) | |
| **RICHARD ADAMS,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**MEMORANDUM AND ORDER**

Petitioner filed a Petition pursuant to 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Doc. 1). Respondent has filed a response (Doc. 17). After review of the pleadings, the Court directed Petitioner to (1) within 30 days either pay the $5.00 filing fee or file an appropriate motion to proceed in forma pauperis; and (2) within the same 30 days, show cause why the matter should not be dismissed as time-barred (Doc. 22). Petitioner filed a Response to the show cause Order (Doc. 23). Petitioner has also filed two Motions for Relief (Docs. 24, 25). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) (Doc. 9).

Before proceeding, the Court first considers Petitioner's motion for leave to proceed in forma pauperis, filed as part of his Response (Doc. 23 at 2, 8-10). Petitioner submitted an affidavit stating he has no sources of income and no money in any accounts, including prison accounts, and that he requested a six month account printout for his inmate trust account but has not received it (*id*. at 8-10). The Court has determined Petitioner is unable to pay the filing fee. *See* 28 U.S.C. § 1915(a)(1). The motion for leave to proceed in forma pauperis is **GRANTED** (Doc. 23 at 2).

In addition, Petitioner's Motion for Relief contains several requests (Doc. 24).  Petitioner appears to request a "stay or abeyance in this case until such time as the requested documents/evidence under respondent's control are provided to plaintiff, and for a period of sixty (60) days from whatever date respondent/counsel(s) for same verify that plaintiff is actually in receipt of same, in that he is unable to present evidence/facts supportive of his pleadings of ultimate facts in favor of granting equitable tolling/relief concerning the filing of his original petition, his traverse, and any responsive pleadings in this actions [sic]" (*id.* at 4).

Petitioner's request is based in part on the fact that Petitioner asserted he did not receive copies of Respondent's exhibits when they were initially mailed on December 20, 2024 (Doc. 19).  Although Respondent filed a Notice with the Court that the copies were resent on March 26, 2025 (Doc. 20), Petitioner filed an envelope postmarked March 26, 2025, but stamped "Received" by the ERDCC Mailroom on May 19, 2025 (Doc. 24 at 6).  Petitioner asserts he did not personally receive the mail until May 21, 2025 (*id*. at 2).  Petitioner's Response to the Court's Show Cause Order was filed on April 28, 2025 (Doc. 23).

The late-received exhibits are not pertinent to Petitioner's Show Cause Response. Petitioner is in the best position to know and present facts and evidence in support of his Response.  The mailed records and transcripts from the state court cases are not relevant to the arguments he raises in the Response.  In light of the Court's determination that that the petition is time-barred, a stay to allow for further filings would be futile.

Petitioner also appears to request that Respondent provide "chronological logs, chronological reports, timekeepers reports, and offender's own inmate files which would evidence the facts," in addition to requesting an evidentiary hearing (Doc. 24 at 3).  "The burden of demonstrating grounds warranting equitable tolling rests with the petitioner." *Earl v. Fabian*,

2

556 F.3d 717, 722 (8th Cir. 2009) (citing *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).

Further, "[a] habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to

discovery as a matter of ordinary course." *Bracy v. Gramley,* 520 U.S. 899, 904, 117 S.Ct. 1793,

138 L.Ed.2d 97 (1997). Here, additional evidence to purportedly support his allegations he was

on lock-down and lacked access to legal resources or the mail system some of the time would not

change the Court's determination that he is not entitled to relief.

Additionally, "[i]n deciding whether equitable tolling applies, we assume the truth of

[Petitioner's] allegations related to his late filing, so his request for an evidentiary hearing is

moot." *United States v. Bell*, 68 F. App'x 762, 764 n.3 (8th Cir. 2003) (citing *Evans v. United*

*States,* 200 F.3d 549, 551 (8th Cir. 2000); *see also Newton v. Kemna*, 354 F.3d 776, 785 (8th Cir.

2004) (the court must hold "a hearing if the petitioner has alleged disputed facts which, if

proved, would entitle him to habeas relief," but "the court may deny an evidentiary hearing if

such a hearing would not assist in resolving the petitioner's claim.") (modified).

To the extent Petitioner expresses a desire to file an amendment or traverse, the Court has

determined the petition is untimely, and any amendment or traverse would be futile. *Johnson v.*

*Steele*, No. 4:13-CV-2046-SNLJ, 2018 WL 3008306, at *9 (E.D. Mo. June 15, 2018) ("a district

court may deny a motion to amend if the amendment would be futile, *Bell v. Allstate Life Ins.*

*Co.*, 160 F.3d 452, 454 (8th Cir. 1998), and, of course, an untimely amendment would be

futile."). Petitioner's motion (Doc. 24) is **DENIED**.

Petition has filed an additional motion seeking copies of the "full docket entries for this

case" and a copy of the Local Rules (Doc. 25 at 1-2). The Court does not typically provide free

copies of documents. If Petitioner wishes to receive copies of his documents, he must prepay for

them at the rate of fifty cents ($.50) per page. To the extent Petitioner requests a hearing or video

3

hearing, this request is denied for the reasons described above.  Petitioner's motion (Doc. 25) is **DENIED**.

The Court has reviewed the remainder of Petitioner's Response to the order to show cause and finds it unpersuasive.  Petitioner's late § 2254 habeas petition is not subject to equitable tolling and will be denied and dismissed as time-barred.  Further, even if it had been timely filed, Petitioner would not be entitled to relief.

## I. BACKGROUND

In January of 2017, Petitioner was found guilty by a jury in the Circuit Court of St. Charles County, Missouri of first-degree assault (Count I), armed criminal action (Count II), unlawful use of a weapon (Count III), unlawful possession of a firearm (Count IV), and first-degree burglary (Count V) (Doc. 17-3 at 418-21).  On May 17, 2017, the St. Charles County Circuit Court sentenced Petitioner as a prior and persistent offender, to a total of 25 years' imprisonment (Doc. 17-4 at 41-43).  Petitioner appealed the judgment, raising three claims:

(1) The trial court plainly erred in overruling his Motion to Suppress Statements.

(2) The trial court plainly erred in overruling his objection to the state's peremptorily striking Venireperson Dexter Belue.

(3) The trial court abused its discretion in overruling his objections to the state's asking the jurors about facts of the case in voir dire.

(Doc. 17-7 at 2).

On July 23, 2019, the Missouri Court of Appeals for the Eastern District issued an opinion affirming the judgment (Doc. 17-10).  Petitioner filed a motion for rehearing or, in the alternative, application for transfer (Doc. 17-11).  That motion was denied on September 16, 2019 (Doc. 17-12).  Petitioner applied for transfer to the Missouri Supreme Court (Doc. 17-13), which was denied on November 19, 2019 (Doc. 17-14).

Petitioner prematurely filed a pro se motion for post-conviction relief on November 17, 2017 (*see Courtney v. State*, No. 1711-CC0155).  On February 24, 2020, counsel filed an amended petition for post-conviction relief on Petitioner's behalf raising the following claims:

(1) Trial counsel failed to obtain a ruling on his motion to suppress statements and did not object to the admission of the relevant statements at trial.

(2) Trial counsel was ineffective in not interviewing and calling three witnesses at trial.

(3) Appellate counsel was ineffective for failing to assert on appeal that the trial court erred in overruling the motion for acquittal at the close of the State's case and at the close of all the evidence.

(Doc. 17-17 at 136-38).  After a hearing, the motion court denied Petitioner's amended post-conviction motion (*id.* at 135-39).  Petitioner appealed only the first and third claims *(*Doc. 17-19).  On April 4, 2023, the Missouri Court of Appeals for the Eastern District per curiam affirmed the denial of post-conviction relief (Docs. 17-21, 17-22).  The Missouri Court of Appeals mandate issued on April 27, 2023 (Doc. 17-23).

On May 3, 2024, Petitioner's Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State custody was filed with the Court (Doc. 1).  Petitioner raises four issues:

(1) Trial counsel was ineffective for failing to obtain a ruling on his motion to suppress statements made to police and failing to object to the statements at issue in the motion when they were introduced at trial.

(2) Trial counsel was ineffective for failing to investigate and call three witnesses to testify for the defense at trial.

(3) Counsel on post-conviction review was ineffective for abandoning his ineffective assistance of trial counsel claim related to his failure to file a motion for mistrial for an alleged Sixth Amendment confrontation clause violation.

(4) Trial counsel was ineffective for failing to move to sever Count IV, unlawful possession of a firearm by a felon, and for failing to object to the presentation of allegedly inadmissible prior bad act and criminal conviction evidence presented at this trial in relation to this count, and failing to make related objections to preserve the issues for appellate review.

(Doc. 1 at 5-21).  Respondent filed a response arguing that the petition should be denied because it was not timely filed under the Antiterrorism and Effective Death Penalty Act of 1996's ("AEDPA") 1-year statute of limitations, 28 U.S.C. § 2244(d)(l)(A), and because each of Petitioner's claims has been procedurally defaulted and/or is meritless (Doc. 17).  Respondent asserts the statute of limitations ran for 369 days before Petitioner mailed his Petition to the Court (*id.* at 12-14).  The Court directed Petitioner to show cause why this action should not be dismissed as untimely (Doc. 22).  *See Day v. McDonough*, 547 U.S. 198, 210 (2006) (before dismissing a habeas petition as time-barred, the Court must give Petitioner an opportunity to state his position on the matter.).

## II.  DISCUSSION

### A.  Show Cause Response

The AEDPA established a one-year statute of limitations for federal habeas petitions challenging state court judgments.  28 U.S.C. § 2244(d)(1); *Finch v. Miller*, 491 F.3d 424, 426 (8th Cir. 2007).  This period generally begins to run when the state court judgment becomes final.  28 U.S.C. § 2244(d)(1); *Jihad v. Hvass*, 267 F.3d 803, 804 (8th Cir. 2001).  A judgment becomes final under § 2244(d)(1)(A) upon the conclusion of direct review, or upon the expiration of the time for seeking review in the state's highest court.  *Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012).  The one-year limitations period is tolled during the pendency of a properly filed application for state post-conviction relief or other collateral review.  28 U.S.C. § 2244(d)(2).

Petitioner challenged his sentence and conviction, and the Missouri Court of Appeals affirmed the trial court's judgment on July 23, 2019.  *See State v. Courtney*, No. ED106127.  The Missouri Supreme Court denied transfer on November 19, 2019.  *See State v. Courtney*, No.

SC98137.  Ordinarily, the statute of limitations would begin running 90 days after denial of

transfer.  *See Gonzalez*, 565 U.S. at 150.  However, Petitioner filed a state post-conviction

motion on November 17, 2017 (*see Courtney v. State*, No. 1711-CC01155), which tolled the

statute of limitations under § 2244(d)(2) during the pendency of those proceedings.  The

Missouri Court of Appeals affirmed the denial of post-conviction relief on April 4, 2023, and

issued its mandate on April 27, 2023.  *See Courtney v. State*, No. ED110591.  Therefore, the

limitations period expired one year later, on April 28, 2024, but since that was a Sunday,

Petitioner had until April 29, 2024.  *See* Fed. R. Civ. P. 6(a)(1) (excluding from computation the

day of the event that triggers the period, and accounting for weekends and holidays).  Petitioner

signed his petition on April 30, 2024, and it was mailed on May 1, 2024 (Docs. 1 at 22; 1-2).

Affording Petitioner the benefit of the doubt that he placed his petition in the mail on the date he

signed it, April 30, 2024, and assuming without deciding, that the federal clock stopped on that

date, 369 days passed before the habeas petition was deemed filed.[1]

The one-year limitations period is not a jurisdictional bar, and it is subject to the doctrine

of equitable tolling.  *Gassler v. Bruton*, 255 F.3d 492, 495 (8th Cir. 2001).  "Equitable tolling is

an 'exceedingly narrow window of relief.'"  *Maghee v. Ault*, 410 F.3d 473, 476 (8th Cir. 2005)

(quoting *Jihad,* 267 F.3d at 805).  A petitioner seeking equitable tolling must show that (1) he

has been pursuing his rights diligently, and (2) that some extraordinary circumstance prevented

timely filing.  *Holland v. Florida*, 560 U.S. 631, 649 (2010); *Muhammad v. United States*, 735

---

[1] Petitioner's motion is dated April 30, 2024, postmarked May 1, 2024, and was received and filed with the clerk's office on May 3, 2024 (Doc. 1).  "[A] pro se prisoner's petition for writ of habeas corpus is filed on the date it is delivered to prison authorities for mailing to the clerk of the court."  *Nichols v. Bowersox*, 172 F.3d 1068, 1077 (8th Cir. 1999) *abrogated on other grounds by Riddle v. Kemna*, 523 F.3d 850 (8th Cir. 2008).  The Court assumes April 30, 2024 is the date Petitioner delivered his petition to prison authorities for mailing.

F.3d 812, 815 (8th Cir. 2013).  The invocation of equitable tolling "to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes." *Flanders v. Graves*, 299 F.3d 974, 976 (8th Cir. 2002) (quoting *Jihad*, 267 F.3d at 806) (internal quotations omitted). "Equitable tolling is proper only when extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time.  Further, equitable tolling may be appropriate when conduct of the defendant has lulled the plaintiff into inaction." *Kreutzer v. Bowersox,* 231 F.3d 460, 463 (8th Cir.2000) *cert. denied,* 534 U.S. 863, 122 S.Ct. 145, 151 L.Ed.2d 97 (2001) (cleaned up).  "The burden of demonstrating grounds warranting equitable tolling rests with the petitioner." *Earl*, 556 F.3d at 722 (citing *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).

Petitioner fails to establish the first prong required for equitable tolling, that he diligently pursued his claims during the relevant time.  When considering equitable tolling in the context of a section 2255[2] motion, the Eighth Circuit has explained:

> "The diligence required for equitable tolling purposes is 'reasonable diligence' not 'maximum feasible diligence.'" *Holland,* 130 S.Ct. at 2565 (internal citations and quotation marks omitted).  In *Holland,* the Supreme Court decided the habeas petitioner had acted with reasonable diligence when he wrote his attorney numerous letters requesting information and providing direction; repeatedly contacted state courts, state court clerks, and the state bar association in an attempt to have his attorney removed from the case; and prepared his own habeas petition and filed it on the very day he discovered he was out of time. *Id.*
>
> This court has found a section 2255 movant demonstrated diligence when he hired counsel well ahead of the deadline, "did everything in [his] power to stay abreast of the status of his case," provided original documents to his attorney to assist with the motion, filed a complaint with the state bar, and filed motions with the district court seeking an extension of time and the return of documents submitted to the attorney. *Martin,* 408 F.3d at 1095.

---

[2] In *United States v. Martin*, 408 F.3d 1089, 1093 (8th Cir. 2005), the Eighth Circuit applied the same equitable tolling standard and analysis from the section 2254 context to the section 2255 context.

*Muhammad*, 735 F.3d at 816–17.  Petitioner fails to set forth specific facts to establish he was reasonably diligent in pursuing his rights.

The Eighth Circuit has noted that limited access to the law library, even consisting of only a few hours on Saturdays, does not impact the diligence determination.  *Earl*, 556 F.3d at 725 ("Because there is 'no freestanding constitutional right to a particular number of hours in the prison law library,' *Entzi v. Redmann,* 485 F.3d 998, 1005 (8th Cir.2007), *cert. denied,* 552 U.S. 1285, 128 S.Ct. 1714, 170 L.Ed.2d 522 (2008), Earl's alleged limited access to the library does not impact our determination that he failed to act with the requisite diligence. Since we conclude that Earl did not diligently pursue his rights he is not entitled to equitable tolling of the AEDPA statute of limitations.").

Further, where a petitioner does not establish he diligently pursued his claims, courts have denied equitable tolling even when apparently harsher circumstances were detailed and alleged, including where an inmate was in 23-hour lockdown, had no access to computers, had moved facilities, had been unable to engage in any activities or visits, and had received significantly delayed mail (4 to 5 months) for approximately a year and a half.  *Pena-Gonzales v. Kansas*, No. 21-3185-SAC, 2021 WL 4134347, at *2 (D. Kan. Sept. 10, 2021).  The Court in *Pena*-Gonzalez noted that the petitioner "has not specifically identified actions he took toward finalizing and filing the petition during the time the federal limitations period was running, such as drafting the petition or asking his appointed state counsel for information on the status of his state 60-1507 proceedings." *Id*.  Likewise, here, Petitioner has not specifically identified any actions he took toward filing the petition during the time the limitations period was running.

Finally, although Petitioner narrowly missed the deadline, that in itself neither demonstrates diligent pursuit of his rights, nor does it entitle Petitioner to equitable tolling.  *See*

9

*Russell v. Frakes*, No. 8:19CV213, 2020 WL 6927284, at *2 (D. Neb. Apr. 27, 2020) (where 370 days had passed the court summarized that "although Petitioner nearly made the deadline, close is not good enough," and "[g]iving Petitioner every benefit of the doubt, he missed the filing deadline by at least five days."); *Modrowski v. Mote*, 322 F.3d 965 (7th Cir. 2003) (affirming dismissal of a habeas petition that was one day late, filed on behalf of a prisoner serving a life sentence for murder).

Petitioner also fails to establish the second prong required for equitable tolling because he fails to specifically explain how the circumstances he alleges were extraordinary or kept him from timely filing the petition.  Notably, prior to being made aware of the petition's untimeliness, he affirmed that nothing stood in the way of his filing, despite being afforded the opportunity to explain any impediments.  Petitioner affirmed to the Court that he was *not* prevented from timely filing his petition when he filled out the section of the habeas petition form titled "Timeliness of Petition" (Doc. 1 at 12).  It states, "[i]f your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar your petition."  *Id*.  Petitioner responded, "[b]ecause I'm filing within time frame."  *Id.*  Petitioner notably omits any issues with respect to his ability to access documents, the law library, or the prison mail system.

Considering Petitioner's affirmation that his petition was timely, if in fact Petitioner simply miscalculated the deadline, the statute would not be tolled on this basis either.  The Eighth Circuit has held that a pro se petitioner's miscalculation of the deadline does not warrant equitable tolling.  *See Shoemate v. Norris*, 390 F.3d 595, 598 (8th Cir. 2004) (denying petitioner's equitable tolling argument for the same reasons set forth by the district court: "pro se status, lack of legal knowledge or legal resources, confusion about or miscalculations of the

10

limitations period, or the failure to recognize the legal ramifications of actions taken in prior post-conviction proceedings are inadequate to warrant equitable tolling.") (internal quotations omitted)).  In *Shoemate*, the petitioner misunderstood the proper procedures for filing a Rule 37 petition under Arkansas law, leading to his failure to file his habeas petition within the one-year limitations period.  *Id*.  The Court determined "the delay was not an extraordinary circumstance, nor was it due to affirmative conduct on the part of the state."  *Id.*

Turning to the allegations in Petitioner's Show Cause Response, "[n]ormal issues associated with prison life are not considered extraordinary."  *Reeder v. Koster*, No. 4:14 CV 450 SNLJ/DDN, 2016 WL 6127702, at *5 (E.D. Mo. Sept. 8, 2016), *report and recommendation adopted*, No. 4:14CV0450 SNLJ, 2016 WL 6124968 (E.D. Mo. Oct. 20, 2016).  The Eighth Circuit has considered whether several prison conditions are "extraordinary" for the purposes of equitable tolling, and have decided the following are not:

> absent additional difficulties or state misconduct, transfers within and between prisons as well as other conditions unique to prison life do not constitute extraordinary circumstances.  *See, e.g., Finch v. Miller*, 491 F.3d 424 (8th Cir. 2007) (finding lack of access to prison law library not an extraordinary circumstance); *Baker v. Norris*, 321 F.3d 769 (8th Cir. 2003) (same); *United States v. Brittain*, 41 F. App'x 246 (10th Cir. 2002) (finding numerous prison transfers not an extraordinary circumstance); *Paige v. United States*, 171 F.3d 559, 561 (8th Cir. 1999) (finding a mail delay between prisons not an extraordinary circumstance).

*Id*.

Courts in the Tenth Circuit instruct that specific facts are required and general assertions, including allegations of prison lockdown, are inadequate to show extraordinary circumstances:

> Lack of access to a law library does not necessarily warrant equitable tolling. *See Donald v. Pruitt*, 853 Fed. Appx. 230, 234 (10th Cir. 2021) ("[Petitioner] is not entitled to equitable tolling based on his allegedly limited access to the law library in the wake of COVID-19."); *Weibley v. Kaiser*, 50 Fed. Appx. 399, 403 (10th Cir. 2002) (unpublished) ("[A]llegations regarding insufficient library access,

standing alone, do not warrant equitable tolling.") .. Nor does a prison lockdown. *See Phares v. Jones*, 470 F. Appx. 718, 719 (10th Cir. 2012) ("The mere fact of a prison lockdown ... does not qualify as extraordinary absent some additional showing that the circumstances prevented him from timely filing his habeas petition."). Petitioner does not specifically explain how delayed mail or a lack of access to the prison law library, computers, visits, or other privileges prevented him from timely filing his petition. Similarly, Petitioner's general assertion that he has been repeatedly transferred during this time frame, without more specific facts or explanation, is not sufficient to establish entitlement to equitable tolling of the deadline.

*Pena-Gonzales*, 2021 WL 4134347, at \*2.

The bald assertions in Petitioner's Response to the Court's Order to Show Cause do not pass muster.  Petitioner asserts that because he is confined, he can only access the Court's forms, the prison copy facilities, notary services, envelopes and postage, his legal papers and records, and the institutional mailbox system as permitted by the Defendant (Doc. 23 at 3-4).  Petitioner provides no timeframes for any alleged lockdown periods.  He merely states that during the time the statute of limitations was not tolled, "**included dates** when the institution . . . held [Petitioner] in a state of lock-down, where he was not permitted to leave his confinement cell(s)," and that "[d]uring the dates when the statute of limitations was not tolled, . . . , **included dates** when [Petitioner] was held in a separate place from where his legal papers/documents were being held by the prison officials" (*id*. at 4) (emphasis added).  Petitioner's vague assertions that he lacked access to resources or the mail system *sometimes* cannot possibly constitute the kind of extraordinary circumstances intended to be addressed by equitable tolling.

The court in *Moore v. Adams*, No. 4:25-CV-00443 RHH, 2025 WL 1249433, at \*2 (E.D. Mo. Apr. 30, 2025) considered similar arguments that prison officials interfered with the petitioner's ability to file on time.  In that case the petitioner raised these issues at the outset, in the timeliness section of the petition, where he asserted, "[t]he prison officials had all my legal

materials in their immediate possession and refused to allow me any access to them until now, which they denied me all my grievances regarding my legal materials." *Id*. at *1.  Despite petitioner's assertion that during his time in Administrative Segregation "there was never a time when ERDCC officials would allow him to look through all of his paperwork at one time so that he could piece through the paperwork to find exactly what he needed to use to file his application for writ of habeas corpus in a timely manner," the court determined the circumstances did not warrant equitable tolling in the Eighth Circuit.  *Id.* at *3.  The court reasoned that

> according to Eighth Circuit caselaw, an unrepresented prisoner's allegations of "a lack of legal knowledge or legal resources" is not sufficient to warrant equitable tolling. *Kreutzer v. Bowersox*, 231 F.3d 460, 463 (8th Cir. 2000); *see also Muhammad*, 735 F.3d at 815 (finding no extraordinary circumstances justifying equitable tolling where movant argued that he was detained in a separate housing unit for five months where he did not have access to the law library or his personal, legal materials). Accordingly, petitioner's assertions that he had the wrong paperwork while he was in Administrative Segregation does not warrant equitable tolling in the 8th Circuit.
>  Although petitioner asserts that "government interference" by ERDCC officials prohibited him from filing his application for writ of habeas corpus, he has not pointed to anything more than the rule at the Missouri Department of Corrections (MDOC) that prisoners in Administrative Segregation can only have twelve (12) inches of legal work with them in their cells. Petitioner admits that he was able to switch out the paperwork he had with him in his cell for other paperwork being held in the property room, but he complains that the caseworker failed to provide him the "right" paperwork when he asked to switch his legal work. Nonetheless, petitioner has not provided facts that anyone at MDOC/ERDCC actively interfered with his ability to file his habeas petition in this Court.

*Id*. at *3-4.  Similarly, in the case at bar, beyond alleging general limitations, Petitioner has not provided facts that anyone actively interfered with his filing.

Petitioner further alleges he mailed to the court the pleadings "as soon after the locked-down/separations described herein, supra, was possible," and claims he "was completely unable to access the institutional mailbox system until such as is indicated next to his signature on the petition [Doc. 1], 30 April 2024" (Doc. 23 at 4).  Petitioner claims his inability to access the

13

institutional mailbox system was an extraordinary circumstance for which equitable tolling should apply, for the time he was in "lock-down" (*id*. at 5).  Even though Petitioner states the signature date and mailing date were affected by the lockdown, Petitioner provides no facts or details as to how he was prevented from signing or mailing his petition or for how long, nor has he shown he was prevented from submitting his petition on any other date while the clock ran. Petitioner's non-specific assertions that he lacked access to resources or the mail system reflect that his "pre-filing efforts dealt with the kinds of obstacles faced by many if not most habeas petitioners, and therefore Congress is presumed to have considered such equities in enacting a one-year limitations period." *Jihad,* 267 F.3d at 806-07.

Further, several courts have determined lockdowns, including those due to COVID-19, do not warrant equitable tolling where there is no showing the petitioner diligently pursued his claims:

> In several cases, § 2254 petitioners have sought equitable tolling due to prison lockdowns and the closure of prison law libraries because of COVID-19.  In those cases, "prisoners are not entitled to equitable tolling if there is no evidence that they diligently pursued their right to file a habeas corpus application prior to the lockdown. *United States v. Lionel Thomas*, No. CR 18-135, 2020 WL 7229705, at *2 (E.D. La. Dec. 8, 2020); *see also United States v. Barnes*, No. 18-CR-0154-CVE, 2020 WL 4550389, at *2 (N.D. Okla. Aug. 6, 2020) (assuming a COVID-19-related lockdown "delayed defendant's ability to file his motion," but concluding equitable tolling was unwarranted because the defendant did not demonstrate he diligently pursued his claims).

*Wolf v. Buckner*, No. 4:23-CV-849 RLW, 2023 WL 5289229, at *3 (E.D. Mo. Aug. 17, 2023).

Petitioner has not shown he diligently pursued his rights, nor has he shown an extraordinary circumstance kept him from filing on time or that he was lulled to inaction by Defendant's conduct.  Petitioner's habeas petition will be denied and dismissed as time-barred.

### B.  Even if Equitable Tolling Applied the Petition would be Denied

Even if the Court proceeded to consider Petitioner's claims, his petition would be denied. In the habeas setting, a federal court is bound by the AEDPA to exercise only "limited and deferential review" of underlying state court decisions.  *Lomholt v. Iowa*, 327 F.3d 748, 751 (8th Cir. 2003).  Under this standard, a federal court may not grant relief to a state prisoner unless the state court's adjudication of a claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  A state court decision is contrary to clearly established Supreme Court precedent if "the state court arrives at a conclusion opposite to that reached by [the] Court on a question of law or . . . decides a case differently than [the] Court has on a set of materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S. 362, 413 (2000).  A state court decision is an unreasonable application of clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case."  *Id.* at 407-08.  Finally, a state court decision involves an unreasonable determination of the facts in light of the evidence presented in the state court proceedings only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record.  28 U.S.C. § 2254(e)(1); *Ryan v. Clarke*, 387 F.3d 785, 790 (8th Cir. 2004).

To preserve a claim for federal habeas review, "a state habeas petitioner must present that claim to the state court and allow that court an opportunity to address his claim."  *Moore-El v. Luebbers*, 446 F.3d 890, 896 (8th Cir. 2006) (citing *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991)).  "Where a petitioner fails to follow applicable state procedural rules, any claims not

15

properly raised before the state court are procedurally defaulted." *Id*. "In Missouri, a claim must be presented at each step of the judicial process in order to avoid default." *Arnold v. Dormire*, 675 F.3d 1082, 1087 (8th Cir. 2012). The federal habeas court will consider a procedurally defaulted claim "only where the petitioner can establish either cause for the default and actual prejudice, or that the default will result in a fundamental miscarriage of justice." *Moore-El*, 446 F3d at 896 (citing *Sawyer v. Whitley*, 505 U.S. 333, 338-39 (1992)).

Petitioner raises the following four grounds for relief:

(1) Trial counsel was ineffective for failing to obtain a ruling on his motion to suppress statements made to police and failing to object to the statements at issue in the motion when they were introduced at trial.

(2) Trial counsel was ineffective for failing to investigate and call three witnesses to testify for the defense at trial.

(3) Counsel on post-conviction review was ineffective for abandoning his ineffective assistance of trial counsel claim related to his failure to file a motion for mistrial for an alleged Sixth Amendment confrontation clause violation.

(4) Trial counsel was ineffective for failing to move to sever Count IV, unlawful possession of a firearm by a felon, and for failing to object to the presentation of allegedly inadmissible prior bad act and criminal conviction evidence presented at this trial in relation to this count, and failing to make related objections to preserve the issues for appellate review.

(Doc. 1). Respondent argues that Ground One is meritless, Grounds Two and Four are procedurally defaulted and meritless, and Ground Three is not cognizable on federal habeas review (Doc. 17). The Court agrees.

### i.      Ground One

Petitioner argues trial counsel was ineffective for failing to obtain a ruling on his motion to suppress statements made to police and failing to object to the statements at issue in the motion when they were introduced at trial. Although Ground One was raised through post-conviction appeal, Respondent argues the Missouri Court of Appeals adhered to *Strickland* and

16

reasonably applied federal law in denying this claim (Doc. 17 at 14-15).  Respondent further

argues that Petitioner has failed to meet his burden to show that every fair-minded jurist would

agree that every reasonable lawyer would have made a different decision.  *Dunn v. Reeves*, 594

U.S. 731, 739–40, 141 S. Ct. 2405, 2411, 210 L. Ed. 2d 812 (2021) ("a federal court may grant

relief only if *every* 'fairminded juris[t]' would agree that *every* reasonable lawyer would have

made a different decision." (quoting *Harrington v. Richter*, 562 U.S. 86, 101, (2011)).  The

Court would agree that the Missouri Court of Appeals' decision should be upheld.

For the purpose of context, the Missouri Court of Appeals' summary of the facts on direct

appeal follows:

> On December 10, 2015, Kenneth Strong (Strong) a small business owner, was returning home from the barber shop with his two-year-old son.  Strong brought his son into the garage and returned to his car to retrieve a package. When he returned to the garage, he encountered a man wearing a mask over half his face and holding a gun.  Strong lunged for the gun, and a struggle ensued.  The man struck Strong in the head with the gun several times, causing lacerations that would require staples.  During the struggle, the gun fired; a bullet was later found lodged in Strong's house.  The man then fled through Strong's and neighbors' backyards.
>
> Strong and several neighbors each called 911, and law enforcement responded.  A crime scene investigator processed the scene, collecting 20 blood samples from the area.  Near the blood, investigators found a Bluetooth device, which they sent to a lab for blood swabs and DNA testing.  The blood samples in the area belonged to Strong.  The DNA found on the Bluetooth device belonged to Appellant.
>
> A short time later, law enforcement received a tip Appellant was at his girlfriend's home in St. Louis County.  Officers responded to the location, and several officers approached the front door to demand entry, while others surrounded the home to cover other exits.  As the officers knocked loudly on the door, they heard a male voice within tell someone not to open the door. Eventually, Appellant's girlfriend answered the door.  As she answered, Appellant slipped out from a second story window, jumped to the ground, and fled.
>
> Officers pursued Appellant for several blocks before they caught up to him when he attempted to hide under a bush.  Two detectives tried to pull Appellant out, and he began to struggle, thrash, and kick.  Officers subdued Appellant as he fought, administering some knee strikes, one or more of them hitting Appellant's face.  Detectives searched the bushes where Appellant was found, locating a

17

cellphone.  Appellant was handcuffed and returned to his girlfriend's home to be questioned.

Upon arriving back at his girlfriend's home, Appellant was read his *Miranda* rights.  Appellant stated he understood his rights.  A detective asked Appellant whether he had discarded any firearms as he fled.  Appellant replied the officers would find what they were looking for where they had arrested him.  When asked why he would throw his phone away, Appellant replied, "Because they can get me in trouble," and, "I'm done, I'm f—ked, I'll die in prison, bro."

Law enforcement obtained a warrant and searched Appellant's cellphone.  They found a video depicting two men surveilling Strong's home from a car while discussing plans to rob Strong.  When showed this video, Strong recognized one of the voices as belonging to James Scott, an acquaintance of his.  Strong knew James Scott because Strong had sold him a car, and later repossessed it due to nonpayment on the loan.  Also visible in the video was a decal of a rose on the window of the car, which was the same decal as one on Appellant's girlfriend's car.  James Scott later confessed to police he had been in the car with Appellant surveilling Strong home, but Appellant was the individual who attacked Strong.

Appellant was tried before a jury and convicted of first degree assault, armed criminal action, unlawful use of a weapon, unlawful possession of a firearm, and first degree burglary.

(Doc. 17-10 at 1-3) (footnote omitted).

On post-conviction appeal, the Missouri Court of Appeals set forth the following

abbreviated facts with respect to this claim:

On December 10, 2015, a masked gunman attacked victim Kenneth Strong in his garage in front of his two-year-old son.  A violent struggle ensued and a shot was fired.  The man fled before police arrived.  Police were able to identify Courtney as the assailant and he was charged with assault in the first degree, armed criminal action, unlawful use of a weapon, unlawful possession of a firearm, and burglary in the first degree.  The jury found Courtney guilty, and he was sentenced to a total of 25 years in prison.  Courtney filed a premature pro se motion for postconviction relief.  Postconviction counsel filed a motion to hold Defendant's motion in abeyance until the disposition of the direct appeal and requested an extension of time to file an amended motion, both of which were granted.

This Court affirmed his convictions on direct appeal in *State v. Courtney*, 589 S.W.3d 49 (Mo. App. E.D. 2019), after which Courtney's appointed postconviction counsel timely filed an amended Rule 29.15 motion.  According to the motion, trial counsel moved to suppress Courtney's statements to police after his arrest asserting they were not voluntary and were made before he was *Mirandized*.  In those statements, Courtney implied that his cell phone contained

18

incriminating evidence and that he would "die in prison."  The trial court heard the motion to suppress, but did not rule on it on the record and trial counsel did not request a ruling or object when the statements were introduced at trial. Instead, counsel argued that Courtney did not make the statements.

…

The motion court held an evidentiary hearing regarding Courtney's allegations against trial counsel and appellate counsel, and on March 9, 2022, issued its findings of fact and conclusions of law denying Courtney's postconviction motion. This appeal follows.

(Doc. 17-22 at 2-3).

To succeed on a claim of ineffective assistance of counsel, Petitioner must show that 1) counsel failed to exercise the level of skill and diligence that a reasonably competent attorney would exercise in a similar situation, and 2) Petitioner was prejudiced by counsel's failure. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  "Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690.  To prove prejudice, Petitioner must show there was a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id*. at 694.  The AEDPA provides "doubly" deferential review of ineffective assistance claims decided in state court.  *Harrington*, 562 U.S. at 105 ("The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so.") (citation modified).

The Missouri Court of Appeals, applying *Strickland* and analogous Missouri case law, determined counsel's decisions constituted trial strategy, not ineffective assistance:

In Point I, Courtney asserts that the motion court clearly erred in denying his amended Rule 29.15 motion because trial counsel failed to obtain a ruling on the record on his motion to suppress statements Courtney made to the police following his arrest and then did not object to the admission of the statements at trial.  Inasmuch as trial counsel testified at the evidentiary hearing that the court denied the motion albeit not on the record and the motion court found counsel's testimony credible, the first part of Courtney's point is factually inaccurate on this

19

record.

"Whether to file a motion to suppress is a matter of trial strategy." *State v. Maddix*, 935 S.W.2d 666, 672 (Mo. App. W.D. 1996).  Counsel will not be considered ineffective for failing to file a meritless motion to suppress. *Id*. (citing *State v. Hunter*, 840 S.W.2d 850, 870 (Mo. banc 1992)).  Here, trial counsel filed the motion to suppress which the court denied according to counsel's testimony, but then failed to put the ruling on the record.  We are unwilling to convict trial counsel of ineffective assistance under these circumstances.

The second part of Courtney's claim is that counsel failed to object at trial to the statements' admissions.  To succeed on an ineffective assistance claim based on counsel's failure to object, the movant must show that (1) the objection would have been meritorious, and (2) the failure to object resulted in a substantial deprivation of his right to a fair trial.  *Nigro v. State*, 467 S.W.3d 881, 886 (Mo. App. W.D. 2015).  Ordinarily, counsel's failure to object is considered trial strategy and is therefore afforded considerable deference.  *Id*.  Thus, "[r]easonable trial strategy decisions cannot form the basis of an ineffective assistance of counsel claim." *Griffith v. State*, 233 S.W.3d 774, 778 (Mo. App. E.D. 2007).

We agree with the motion court that Courtney has failed to show that objecting to the admission of the statements would have been meritorious or that he was deprived of a fair trial.  He merely states that he was "painted in a negative light" and he was "prejudiced by being convicted."  For his part, trial counsel testified at the evidentiary hearing that he did not believe an objection to Courtney's statements would have been successful because the statements were voluntary.  He also believed the statements were admissible as spontaneous utterances.  Instead of objecting, he chose to argue that Courtney never made the statements at all.  ("It is not ineffective assistance of counsel for an attorney to pursue one reasonable trial strategy to the exclusion of another, even if the latter would also be a reasonable trial strategy." *Clayton v. State*, 63 S.W.3d 201, 207-08 (Mo. banc 2001)).  Therefore, we consider trial counsel's choice not to object as sound trial strategy. Point I is denied.

(Doc. 17-22 at 4-5).

This Court agrees.  According to trial counsel's testimony, the trial court ruled on and denied the motion to suppress, and the motion court credited counsel's testimony.  "We defer to the motion court's assessment of credibility." *King v. Roper*, 2005 WL 1518291, at *9; *Winfield v. Roper*, 460 F.3d 1026, 1035 (8th Cir. 2006) ("Issues of credibility are left to the discretion of the state courts."); *Pittman v. Black*, 764 F.2d 545, 546 (8th Cir. 1985) ("The federal court's role is simply to ascertain whether the state court's findings of fact have fair support in the record.").

20

Further, relying on state law, the Court of Appeals reasonably determined counsel's decision to argue Petitioner never made the statements at all instead of objecting was reasonable trial strategy, and not ineffective assistance. It is not the role of this Court to second-guess the state court's determination about a question of Missouri law. *See Arnold,* 675 F.3d at 1086 ("We do not second-guess the decision of a Missouri state court on Missouri law.").

Moreover, the Missouri Court of Appeals' rejection of this claim was not contrary to, or an unreasonable application of federal law. "The Supreme Court's guidance is that strategic decisions by counsel are 'virtually unchallengeable' unless they are based on deficient investigation." *Johnson v. Norris*, 537 F.3d 840, 848 (8th Cir. 2008) (citing *Strickland,* 466 U.S. at 690; *Link v. Luebbers,* 469 F.3d 1197, 1204 (8th Cir. 2006)). After the motion to suppress was denied, trial counsel believed the statements were admissible and objections would not be meritorious. In these circumstances, trial counsel's decision to instead argue the statements were not made at all was part of his trial strategy. *See Norris*, 537 F.3d at 848 (holding than an Arkansas state court ruling that trial counsel's decision "not to object as part of a strategy to make Johnson's statements (including the confession to the Heath murder) appear to be 'outrageous ramblings' and 'not credible'" was not grounds for postconviction relief was not contrary to or an unreasonable application of clearly established federal law) (quoting *Johnson v. Arkansas*, 356 Ark. 534, 157 S.W.3d 151, 164 (Ark.2004)).

The Missouri Court of Appeals' rejection of this claim would neither be found to be contrary to, nor an unreasonable application of *Strickland v. Washington*, nor was it based on an unreasonable determination of the facts. Ground One is denied.

21

### ii.     Grounds Two, Three, and Four

Respondent argues Grounds Two and Four are procedurally defaulted (Doc. 17 at 15-17, 18-19).  The Court agrees.

Ground Two, the failure to investigate and call three witnesses, was raised in Petitioner's amended motion for post-conviction relief but not in his post-conviction appeal.  *See Arnold*, 675 F.3d at 1087 (claims not raised through post-conviction appeal are procedurally defaulted).  To the extent Petitioner blames post-conviction appellate counsel for the default, his argument fails.  *See Arnold*, 675 F.3d at 1087 (holding any error by Missouri post-conviction appellate counsel in failing to raise claims cannot constitute cause to excuse procedural default) (citing *Martinez v. Ryan*, 566 U.S. 1, 16 (2012), ("The holding in this case does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings …")); *see also Shinn*, 596 U.S. at 380 (discussing the narrowness of *Martinez*).

Ground Four was not raised at all on appeal or during post-conviction proceedings and would therefore be procedurally defaulted as well.  *See Arnold*, 675 F.3d at 1087.  Petitioner does not appear to attempt to demonstrate both cause and prejudice to excuse the procedural default of these claims, nor does he argue that failure to address these claims would result in a fundamental miscarriage of justice.

Respondent argues Ground Three is not cognizable on federal habeas review because Petitioner argues counsel on post-conviction review was ineffective.  The Court agrees with Respondent here as well.  *See* 28 U.S.C. § 2254(i) ("[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254"); *Cox v. Burger*, 398 F.3d 1025, 1030 (8th Cir. 2005) ("There is no federal constitutional right to post-conviction counsel.").

### III. CONCLUSION

For the reasons stated above, the Court finds that Petitioner is not entitled to federal habeas relief.  Furthermore, Petitioner has failed to make a substantial showing of the denial of a constitutional right, which requires a demonstration "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right."  *Khaimov v. Crist*, 297 F.3d 783, 785 (8th Cir. 2002) (quotation omitted).  Thus, the Court will not issue a certificate of appealability.  28 U.S.C. § 2253(c).

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner's Motion to Proceed In Forma Pauperis (Doc. 23) is **GRANTED**.

**IT IS FURTHER ORDERED** that Petitioner's Motion for Relief (Doc. 24) is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner's Motion for Relief (Doc. 25) is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) is **DENIED** and this case is **DISMISSED** as time-barred. *See* 28 U.S.C. § 2244(d)(1).

**IT IS FINALLY ORDERED** that a certificate of appealability will not be issued.  28 U.S.C. § 2253.

A separate Judgment shall be entered in accordance with this Memorandum and Order.

Dated this 31st day of March, 2026.


/s/ Noelle C. Collins
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE

23